OBED H. MYERS, APPELLEE, V. MILTON MOORE, APPELLANT.

FILED JANUARY 5, 1910.   No. 15,894.

1. **Brokers:** ACTION FOR COMMISSION: EVIDENCE. Plaintiff and defend-
ant entered into a written contract by which defendant employed
plaintiff as a real estate agent to sell certain lands. The contract
contained a clause that if the agent should sell said property, or
be in any manner instrumental in selling the same, he should
receive a stipulated compensation. Plaintiff advertised the prop-
erty by the distribution of circulars, one of which he sent to
another real estate agency in a distant part of the state, and by
and through whom a person was found who, after failing to ex-
change farms with the owner, finally purchased it. *Held*, That,
under the contract and contradictory evidence submitted, the
jury were justified in finding in favor of the plaintiff.

2. **Trial:** INSTRUCTIONS. The cause being tried upon the theory that
the contract furnished the basis of plaintiff's action, it was com-
petent for the court to instruct the jury with reference thereto.

3. **Appeal:** CONFLICTING EVIDENCE. Where the testimony of witnesses
is conflicting, the weight to be given to that of any witness is
for the jury alone, and their finding thereon is binding upon the
court.

APPEAL from the district court for Harlan county:
HARRY S. DUNGAN, JUDGE. *Affirmed.*

*R. L. Keester,* for appellant.

*John Everson, contra.*

REESE, C. J.

This is an action for the recovery of commission as a
real estate agent or broker. The land was listed with
plaintiff for sale by a written contract creating the agency,
and contained a clause that if the agent should "sell, or
be in any manner instrumental in selling said property
during said time, I will pay him commission thereon at
the rate of 5 per cent. on the first one thousand dollars
and 2½ per cent. on each additional dollar to the amount
of the sale." The evidence shows that plaintiff advertised

the land by use of circulars, which he sent to different persons, and among whom was a firm of real estate agents at Wood River, in this state. From this arose a correspondence between plaintiff and the firm referred to, in which plaintiff was advised that a person (Mr. Collins) living near Wood River was the owner of a desirable farm which he would exchange for one more suited to his needs. Collins came to Alma, the place of residence of plaintiff, and was, by plaintiff, sent to view defendant's land. He made the proposition of exchange, but this was declined by defendant. He then went away. It appears that, from a hasty and superficial view of the property, he was favorably impressed with it, but could not, or would not, purchase until he had disposed of his farm near Wood River, which he soon thereafter sold through the agency at that place above referred to, and through which he kept up his correspondence with plaintiff, they notifying the latter that Collins was now ready to purchase, and inquiring if defendant's farm was unsold and yet on the market. Plaintiff answered both inquiries in the affirmative, and Collins came to the neighborhood of defendant's farm in search of a desirable location. He brought with him a letter to plaintiff from the Wood River agents, but did not deliver it. In the meantime defendant had, by verbal directions, authorized others to sell the land, and among whom were Waters & Martin of Stamford, near which the land was located. On the 28th of November, 1904, the agency at Wood River wrote the Stamford Bank, of which Waters was an officer, calling attention to Collins' farm, and giving a description of it and the price at which it was held. We find no other correspondence between them until February 8, 1905, when Waters wrote the agents at Wood River, calling their attention to defendant's farm and giving a description of its location, quality, etc. On February 28, 1905, they informed the bank, by letter, that their client would start in a short time in search of a farm. The written contract of employment between plaintiff and defendant was entered

into in the fall of 1904, and from December 29 of that year to April 15, 1905, the correspondence between plaintiff and the Wood River agency appears to have been kept up. In June, 1905, Collins came to Stamford with the purpose of again viewing defendant's farm, and was furnished a conveyance thereto by Waters & Martin. He purchased said farm, the defendant returning with him to the Stamford Bank and closing the sale. Defendant was informed by plaintiff that the commission would be expected. Waters & Martin also claimed the commission. Defendant refused to pay either, but was willing to pay the party entitled to the same. Waters & Martin indemnified him against plaintiff's demand, including all costs and expenses, when he paid the money to the Stamford Bank. This action was soon thereafter commenced, and is in reality a suit between plaintiff and Waters & Martin. A jury trial was had in the district court, which resulted in a verdict and judgment in favor of plaintiff. Defendant appeals to this court.

In the foregoing statement of facts we have aimed to state those which are not controverted. There was a sharp conflict upon many important elements of the case, but of which the jury were the sole judges. That the contract made with plaintiff by defendant was an improvident one might be conceded, but it does not follow that it is not binding, and it cannot be questioned but that plaintiff was in some manner "instrumental in selling said property." Aside from this we might have serious doubts as to the plaintiff's right to recover, and yet we could not disturb the verdict of the jury upon the conflicting evidence.

Complaint is made that the trial court erred in refusing to give each of ten instructions presented by the defense. It would serve no good purpose to set them all out here, and we must be content with saying that the principles contained in many of them were included in those given by the court upon its own motion, and in some the provisions of the contract of employment were lost sight of,

We are unable to find reversible error in this action of the court.

It is also contended that the court erred in giving instruction numbered 6 of those given. In that one the jury were instructed that if they found that plaintiff was instrumental in finding a purchaser, and aided and assisted in making the sale, or that he found the purchaser with whom defendant himself consummated the sale, he would be entitled to the commission as provided in the contract; that it would be sufficient if through his influence or agency the parties came together and entered into negotiations which ended in making the bargain; that it was not necessary for plaintiff to be present at the close of the sale; that he earned his commission if he found the purchaser who bought the land as a result of his efforts. While this instruction might possibly be open to criticism in the absence of a contract of the kind entered into, yet it was in accord with it, the execution of which could not be questioned, and therefore was not erroneous. It is not within the province of the courts to make contracts between litigants, but to enforce them if legal and not unconscionable. The free agency of contracting parties, so long as their contracts are legal and binding, must be recognized.

No reversible error being shown in the record, the judgment of the district court is

AFFIRMED.