ORLANDO B. MANVILLE, APPELLEE, V. GEORGE W. PARK, APPELLANT.

FILED APRIL 11, 1922.   No. 21762.

1. **Appeal:** FINDINGS BY COURT. The findings of the trial judge in an action at law tried by the court without the intervention of a jury are entitled to the same weight as the verdict of a jury, and, if supported by sufficient competent evidence, will not be disturbed by this court.

2. **Brokers:** RIGHT TO COMMISSION. Defendant desired to sell or exchange a tract of land in Wyoming for other lands. He employed plaintiff, a real estate broker, at an agreed commission, to procure such sale or exchange. Under the facts set forth in the opinion, *held*, that plaintiff was entitled to recover his commission, even though an exchange of lands was finally completed through the activity of another broker, or intermediary, brought into relations with defendant by plaintiff.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Williams & Kryger*, for appellant.

*Kelsey & Rice*, contra.

Heard before LETTON, DAY and DEAN, JJ., SEARS and WESTOVER, District Judges.

PER CURIAM.

Plaintiff brings this action to recover a commission which he alleges is due him from the defendant, under the terms of a written contract made by correspondence, for his services as a broker or agent in procuring the exchange of certain lands belonging to the defendant for other lands. The answer admits the correspondence, denies that plaintiff ever found a purchaser who would buy or trade for the lands on terms satisfactory to defendant, and denies that plaintiff ever made or closed any sale or exchange.

The case was tried to the court without the intervention of a jury. Judgment was rendered in favor of plaintiff for $1,250. Defendant appeals.

Plaintiff, Manville, was in business as a real estate broker or agent at Oakdale. He had formerly sold the defendant a ranch at Lusk, Wyoming. In July, 1918, some correspondence was had between the parties, in which the defendant described the ranch at Lusk, and authorized plaintiff to find a purchaser. Plaintiff proposed that he would make the exchange for $1,250 commission, and this proposition was accepted. In this letter plaintiff said: "I want the commission agreed upon regardless of deal, further than it's a deal you accept, and due upon signing of contracts. * * * I am telling whom this ranch belongs to and am working same as if I had exclusive, as I feel confident you will protect my interests wherever it's apparent I have started a deal." Plaintiff advertised the land in the Norfolk newspapers and circulated generally information that he had this ranch for disposal. One Knight, a real estate agent at Norfolk, saw this advertisement, went to see Manville, and told him that he and another agent, named Raitt, had a man at Fremont who owned land in Saunders county which perhaps might be exchanged for the ranch. They talked the matter over, and Knight, with Manville's consent, called Park over long-distance telephone in relation to the Saunders county land. He arranged with Park to accompany him to inspect this land the next day, then called up Manville and told him that. Park desired Manville to meet them at the South Norfolk station. It appears that Manville and Knight had had some conversation about the matter of commission; that Manville told Knight he was only getting $1,250 commission and could not divide, and that he would have to obtain his commission in some other way. Knight desired him to raise the price of the land and give him the increase over Park's price as commission.. This Manville refused to do. Manville and Knight both testified, in substance, that they met Park at the South Norfolk station, and that the matter of commission was spoken of. The conversation between Manville and Knight was related to him, and Park said: "If your land suits me and I accept the propo-

sition when I see it, you can raise the price of my ranch sufficient to pay you a commission." Manville handed Park the letter, exhibit C. This letter narrates the conversation with Knight about the land and the commission. The concluding sentence is: "I am constantly talking this ranch up and have succeeded in bringing it to the favorable attention of every dealer in Norfolk, and it is getting where some one will soon take it on. I have it thoroughly understood with Knight that he has to get his com. at his end, so don't let him hand you anything to the contrary." Park admits receiving this letter.

After examining the Saunders county land, defendant approved it. Mr. Moody, the owner of the land, examined the Wyoming ranch. After some negotiations, which took place at Fremont, the exchange was consummated. During these negotiations defendant agreed to pay Knight $2,500 commission when the exchange was made, and paid that amount to him by check. He afterwards refused to pay plaintiff any commission, giving as his reason, in a letter: "I had to pay Knight and his pal at Fremont a good stiff commission in order to get it through, and owing to the fact that you did not do very much on this deal, merely wrote me one letter and told Knight about it, think you should leave me off on this commission."

It is undisputed that Manville had been employed by Park to procure a sale or exchange of the Lusk ranch; that he put defendant into communication with Knight, and that by means of the activity of Manville and Knight the exchange was consummated. The testimony of Manville and Knight as to the conversation at the South Norfolk station is in conflict with that of Park, but the court evidently adopted their account of it. Knight was working with Raitt, who was a broker for Moody, the owner of the land in Saunders county. The fact that Park promised to pay him a commission if he procured the exchange of these lands at an increased price, and after negotiations were in progress at Fremont agreed to pay, and did pay, him a specified amount, could not affect the right of Man-

ville to his commission, since he was in fact the moving and procuring cause that brought Moody and Park into communication and negotiation, and defendant had knowledge from the correspondence that plaintiff expected a commission if he was the initial and moving cause of the negotiations. Park should have had an understanding and settlement and terminated his relations with Manville at the time he first saw Knight, if he desired to discharge himself of any obligation to pay Manville, and to employ Knight independently. He was apparently so anxious to make the exchange that he took the risk of having to pay both Manville and Knight. *Myers v. Moore,* 85 Neb. 715; *Beougher v. Clark,* 81 Kan. 250, 27 L. R. A. n. s. 198.

The fact that Manville did not show Park the Moody land is immaterial. The agent for Moody did this. Manville and Knight discussed the question as to whether Manville should accompany Moody, Raitt, and Knight to Wyoming, but Knight suggested that too many agents trying to consummate the exchange might alarm Moody, as he was "agent shy," and thus defeat the exchange. For this reason, he testifies, he did not accompany them.

The trial judge, with the witnesses before him, evidently considered the testimony on behalf of the plaintiff most convincing, and therefore found in his favor. His findings in this respect in a law case are entitled to the same weight as a verdict of a jury, and, if supported by sufficient competent evidence, will not be disturbed by this court. The evidence is sufficient to sustain the conclusion reached, and the judgment of the trial court is

·AFFIRMED.